UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRA DON PARTHEMORE,<br><br>    Plaintiff,<br><br>    v.<br><br>B. KISSEL, et al.,,<br><br>    Defendants. | No. 2:13-cv-0819 KJM AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are the parties' fully briefed cross-motions for summary judgment. ECF Nos. 71, 76.

I.    <u>Procedural History</u>

Plaintiff filed the operative complaint on September 11, 2013.[1] ECF No. 21. The court screened the complaint and found that it stated cognizable claims for relief pursuant to § 1983 for retaliation in violation of the First Amendment and deliberate indifference to a serious medical condition in violation of the Eighth Amendment. ECF No. 24 at 2. Defendants filed a motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim. ECF No.

---

[1] Since plaintiff is a prisoner proceeding pro se, he is afforded the benefit of the prison mailbox rule. See <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988).

1

1   33.  The court vacated the motion on the basis of <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir. 2014),
2   which held the defense of failure to exhaust administrative remedies should, in most cases, be
3   presented in a motion for summary judgment rather than a motion to dismiss.  ECF No. 39.
4        Defendants then filed a motion for summary judgment on the ground that plaintiff failed
5   to exhaust his administrative remedies before filing suit (ECF No. 42) and a motion to dismiss for
6   failure to state a claim (ECF No. 43).  The court denied the motion to dismiss, but found that
7   plaintiff had not exhausted administrative remedies for several of his claims.  ECF No. 49 at 15,
8   20.  The only claims to survive the motion for summary judgment were those for deliberate
9   indifference in violation of the Eighth Amendment against defendant Soltanian for refusal to
10  order shoulder surgery and against defendants Smith and Heatley for failure to issue a medical
11  hold.  ECF No. 49 at 15.
12       Defendants have now filed another motion for summary judgment (ECF No. 71) which
13  plaintiff opposes (ECF No. 74).  Additionally, plaintiff filed a cross-motion for summary
14  judgment[2] (ECF No. 76) which defendants oppose (ECF No. 79).
15  II.   <u>Plaintiff's Allegations</u>
16       The case proceeds against defendants Soltanian, Smith, and Heatley.  Defendants Kissel,
17  Thomas, Costa, Sherrard, Heintschel, Reaves, Toor, Malakkla, Virk, and Neal were dismissed for
18  failure to exhaust administrative remedies against them.  ECF No. 50.  Defendant Blackwell was
19  dismissed on screening.  ECF No. 24 at 3.
20       Plaintiff claims defendants were deliberately indifferent to his serious medical needs in
21  violation of the Eighth Amendment.  ECF No. 21 at 8-10.  Specifically, he alleges that defendant
22  Soltanian repeatedly thwarted his attempts to obtain shoulder surgery even though he was aware
23  that plaintiff had been told by an orthopedic surgeon he needed a complete shoulder replacement.
24  <u>Id.</u> at 8.  He further alleges that defendant Soltanian prescribed steroid shots instead of surgery,

---

[2] Plaintiff's objections to defendants' motion for summary judgment (ECF No. 74) and plaintiff's motion for summary judgment (ECF No. 76) are virtually identical.  The only substantive difference is a section in plaintiff's objections asking the court to sua sponte enter summary judgment in his favor.  ECF No. 74 at 22-23.

2

stating plaintiff was "too old" for surgery and his left-shoulder injury would not affect his quality of life because plaintiff is right-handed. Id. at 8-9. Plaintiff alleges defendants Smith and Heatley were deliberately indifferent when they denied his request for a medical hold that would have prevented him from being transferred out of Mule Creek State Prison ("MCSP"). Id. at 10. As a result of their denials, plaintiff was transferred from MCSP to Valley State Prison ("VSP") the day before his shoulder surgery was scheduled to take place, thereby delaying surgery. Id.

### III. Motion for Summary Judgment

#### A. Defendants' Arguments

Defendants argue they are entitled to summary judgment because plaintiff failed to exhaust administrative remedies before filing suit, they were not deliberately indifferent, and they are entitled to qualified immunity. ECF No. 71.

#### B. Plaintiff's Arguments

At the outset, the court notes that plaintiff's motion for summary judgment is untimely. Motions for summary judgment were to be filed by March 16, 2016 (ECF No. 70) and plaintiff did not file his motion until May 25, 2016 (ECF No. 76). Plaintiff has also failed to file a statement of undisputed facts in support of the motion, as required by Local Rule 260(a). Plaintiff's motion for summary judgment will be denied as untimely. However, since the motion is identical to plaintiff's opposition to defendants' motion for summary judgment, his arguments and any additional documentation will still be considered as part of his opposition to defendants' motion.

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d

3

1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff does not dispute the fact that he did not exhaust the three appeals raised by defendants in their motion for summary judgment.  Instead, he argues he is excused from the exhaustion requirement.  ECF No. 74 at 8-12.  In regards to his Eighth Amendment claims, plaintiff argues defendant Soltanian was deliberately indifferent for failing to order shoulder surgery and defendants Smith and Heatley were deliberately indifferent when they failed to issue a medical hold.  Id. at 12-18.  He further asserts that the defendants are not entitled to qualified immunity and have not met their burden of proof.  Id. at 18-22.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

1    support the fact." Fed. R. Civ. P. 56(c)(1).

2    "Where the non-moving party bears the burden of proof at trial, the moving party need
3    only prove that there is an absence of evidence to support the non-moving party's case." Oracle
4    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
5    Indeed, summary judgment should be entered, "after adequate time for discovery and upon
6    motion, against a party who fails to make a showing sufficient to establish the existence of an
7    element essential to that party's case, and on which that party will bear the burden of proof at
8    trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
9    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
10   a circumstance, summary judgment should "be granted so long as whatever is before the district
11   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
12   56(c), is satisfied." Id.

13   If the moving party meets its initial responsibility, the burden then shifts to the opposing
14   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
15   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
16   existence of this factual dispute, the opposing party may not rely upon the allegations or denials
17   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
18   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
19   Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
20   fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty
21   Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
22   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a
23   reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

24   In the endeavor to establish the existence of a factual dispute, the opposing party need not
25   establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed
26   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
27   truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities
28   Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the

pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On March 16, 2016, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 71-2. See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc).

V.  Legal Standards for Exhaustion

A. Prison Litigation Reform Act

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA requires prisoners to exhaust available administrative remedies before bringing an action challenging prison conditions under § 1983. 42 U.S.C. 1997e(a). "The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino, 747 F.3d at 1171 (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)). "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

1  Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that

2  there is something in his particular case that made the existing and generally available

3  administrative remedies unavailable to him." Id.

4  Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a

5  prison's grievance process as long as some remedy remains available. "The obligation to exhaust

6  'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer

7  the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the

8  grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in

9  original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

10  "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

11  administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

12  unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original). In

13  discussing availability in Ross the Supreme Court identified three circumstances in which

14  administrative remedies were unavailable: (1) where an administrative remedy "operates as a

15  simple dead end" in which officers are "unable or consistently unwilling to provide any relief to

16  aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no

17  ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates

18  from taking advantage of a grievance process through machination, misrepresentation, or

19  intimidation." 136 S. Ct. at 1859-60. "[A]side from [the unavailability] exception, the PLRA's

20  text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

21  circumstances.'" Id. at 1856. "[M]andatory exhaustion statutes like the PLRA establish

22  mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

23      B.  California Regulations Governing Exhaustion of Administrative Remedies

24  "The California prison system's requirements 'define the boundaries of proper

25  exhaustion.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S.

26  at 218). In order to exhaust, the prisoner is required to complete the administrative review

27  process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. California

28  regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material

7

adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017).[3] The appeal process is initiated by the inmate's filing a "Form 602" the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id., § 3084.2(a). "The California prison grievance system has three levels of review: an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may refuse to accept an appeal and does so either by "rejecting" or "canceling" it. Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.").

"Cancellation" is reserved for those appeals which the inmate cannot simply correct. For example, an appeal can be cancelled if the action complained of "is not within the jurisdiction" of the CDCR, or if time limits for submitting the appeal have been exceeded. Id., § 3084.6(c)(1), (4). Upon "cancellation" of the appeal, the inmate's only recourse, if he still wishes to pursue it, is to show that the reason given for the cancellation was inaccurate or erroneous, or that "new information" now makes it eligible for review. Id., § 3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

According to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies." Id., § 3084.1(b). Outside of any exceptions outlined in the regulations, "all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted." Id.

////

---

[3] All citations to Title 15 of the California Code of Regulations are, unless otherwise noted, for the current version, which has been unchanged, in pertinent part, since January 2011.

8

1     VI.    Undisputed Material Facts

2     Plaintiff has not challenged, and nothing in the record contradicts, any of the facts related to the contents or timing of the appeals presented by the defendants, and the facts surrounding these appeals shall be deemed admitted for purposes of the motion. Fed. R. Civ. P. 56(e)(1) ("If a party . . . fails to properly address another party's assertion of facts as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Plaintiff also has not disputed the accuracy of the medical records produced by defendant that document the treatment he received and any facts obtained from plaintiff's medical records are deemed undisputed.

    A.    Defendant Soltanian

        1.    First Request for Surgery (Appeal No. 1296)

On June 28, 2011, plaintiff initiated Appeal No. 1296, in which he complained that he had not received an MRI or been seen by Dr. Lovett for a surgery consultation on his left shoulder. ECF No. 71-5 at 13-15. He requested that he be seen by Dr. Lovett for a surgery consultation immediately. Id. at 13. He was seen by Dr. Lovett on July 22, 2011, and according to Dr. Lovett's notes, he discussed injections with plaintiff, and advised that they "would give him probably 2-3 weeks of temporarily [sic] relief, but in fact, he [did] require a reverse total shoulder replacement to treat his pain." ECF No. 71-10 at 72. Dr. Lovett recommended referral to UC Davis for shoulder surgery. Defendants Undisputed Statement of Facts (DSUF) (ECF No. 71-3) ¶ 31; Response to DSUF (ECF No. 75) ¶ 31. On July 24, 2011, plaintiff was referred to San Joaquin General Hospital for shoulder surgery. DSUF ¶ 32, Response to DSUF ¶ 32. On July 27, 2011, plaintiff was seen by defendant Soltanian regarding Appeal No. 1296 and the appeal was partially granted because plaintiff had just been to see Dr. Lovett and he had a follow-up appointment scheduled to discuss the appointment with Dr. Lovett. ECF No. 71-5 at 31. The request for an MRI was not granted. Id. Plaintiff was advised he could submit the issue for second-level review if he desired, but did not. Id.; DSUF ¶¶ 4-5; Response to DSUF ¶¶ 4-5.

The request for services form for plaintiff's shoulder surgery indicates that plaintiff refused the referral on August 26, 2011, and January 9, 2012; he signed a refusal of exam on January 19, 2012; and he admits that he initially refused to be examined at San Joaquin General

9

Hospital.  DSUF ¶ 35; Response to DSUF ¶ 35; ECF No. 71-6 at 6-7; ECF No. 76-2, ¶ 6.

### 2. Second Request for Surgery (Appeal No. 2656)

On June 14, 2012, plaintiff was seen by defendant Soltanian and complained that his left shoulder pain had gotten worse.  ECF No. 71-10 at 73.  Defendant Soltanian was not aware of plaintiff renewing his request for shoulder surgery prior to that date.  DSUF ¶ 36; Response to DSUF ¶ 36.  On August 8, 2012, plaintiff initiated Appeal No. 2656 in which he requested to be referred to UC Davis for shoulder surgery, as Dr. Lovett had recommended, and to have an MRI performed.  ECF No. 71-5 at 33-35; DSUF ¶ 38; Response to DSUF ¶ 38.  Because plaintiff had been seen by Dr. Lovett over a year prior to submitting the appeal, it was cancelled[4] as untimely on August 13, 2012.  ECF No. 71-5 at 35.  The response also stated that "[t]his screening action may not be appealed unless you allege that the above reason(s) is inaccurate."  Id.  It further instructed that while plaintiff could not resubmit the appeal, he could file a separate appeal challenging the cancellation if he felt it had been cancelled in error and explaining why it should not have been cancelled.  Id.; DSUF ¶ 7; Response to DSUF ¶ 7.  A note at the bottom stated that "[t]he original appeal may only be resubmitted if the appeal on the cancellation is granted."  Id.  The cancellation notice also informed plaintiff that his administrative remedies had not been exhausted.  Id.  Plaintiff did not pursue the appeal any further.  DSUF ¶¶ 8, 38; Response to DSUF ¶¶ 8, 38.

### B. Defendants Smith and Heatley (Appeal No. 3499)

On April 4, 2013, plaintiff submitted Appeal No. 3499, in which plaintiff requested a long-term medical hold to stop his impending transfer to VSP.  ECF No. 71-5 at 5-6.  Plaintiff was transferred to VSP on April 22, 2013.  DSUF ¶ 10; Response to DSUF ¶ 10.  A first level response was issued on May 15, 2013, after plaintiff had been transferred to VSP, denying his appeal and informing him to direct concerns about his medical treatment to VSP staff.  ECF No.

---

[4] In one portion of their statement of undisputed facts, defendants incorrectly identify the appeal as rejected rather than cancelled (DSUF ¶ 38) and plaintiff does not object to this description (Response to DSUF ¶ 38).  However, it is clear from the documentation and previous descriptions of the appeal that it was cancelled, not rejected.  ECF No. 71-5 at 33, 35; DSUF ¶¶ 6-8; Response to DSUF ¶¶ 6-8.

71-5 at 9-10.  According to the response, MCSP officials made three attempts to contact plaintiff by phone at VSP for an interview, but no interview was conducted.  Id. at 9.

Plaintiff appealed the decision on May 31, 2013, stating that the response did not "absolve J. Soltanian, B. Kissel, C. Smith and S. Heatley of their 'deliberate indifference' in not giving [him] a medical hold for [his] shoulder surgery which was pre-scheduled for 4/23/13."  Id. at 7.  The appeal was rejected at the second level for failure to attach necessary supporting documents.  DSUF ¶ 15; Response to DSUF ¶ 15.  Plaintiff was informed that in order to continue with the appeal process he could either return the appeal with the necessary information within thirty days or file a separate appeal challenging the rejection decision if he believed the reason for rejection was inaccurate.  Id.; ECF No. 71-5 at 11.  He was also informed that if he needed assistance with the appeal, he could file with VSP's appeals office.  Id.  Plaintiff did not resubmit the grievance or file any other healthcare grievances regarding the denial of his request for a medical hold.  DSUF ¶¶ 17-18; Response to DSUF ¶¶ 17-18.

VII.   Discussion

It is undisputed that plaintiff did not exhaust Appeal Nos. 1296, 2656, and 3499 and plaintiff does not allege that there are any fully exhausted appeals that address the issues before the court.  ECF No. 71-1 at 16-18, ECF No. 74 at 8-12.  Resolution of the exhaustion issue therefore turns on whether or not administrative remedies were available to plaintiff.  If administrative remedies were available then plaintiff has failed to exhaust and any unexhausted claims must be dismissed.  See Porter v. Nussle, 534 U.S. 516, 524 (2002) (exhaustion in prisoner cases covered by § 1997e(a) is mandatory).

A.   Defendant Soltanian

Defendants argue that plaintiff failed to exhaust his administrative remedies for his claims that defendant Soltanian denied or delayed his shoulder surgery, that defendant Soltanian was not deliberately indifferent to plaintiff's medical needs, and that Soltanian is alternatively entitled to qualified immunity.  ECF No. 71-1 at 16-17, 20-25, 27.  With respect to the exhaustion argument,

////

////

11

they assert that plaintiff filed only two health care grievances (Appeal Nos. 1296[5] and 2656) that could relate to his claims that defendant Soltanian was deliberately indifferent for refusing to order shoulder surgery. Id. at 7.

In response, plaintiff contends that he was not required to continue with Appeal No. 1296 because it was partially granted and that he had no obligation to proceed further with Appeal No. 2656 because it was cancelled. ECF No. 74 at 9-11. He further argues that Soltanian was deliberately indifferent and is not entitled to qualified immunity.

As an initial matter, though plaintiff portrays his attempts to obtain shoulder surgery as a single, continuous effort, there are actually two separate requests for surgery at issue. Plaintiff's first attempt to obtain surgery came to an end when his request was granted and he proceeded to refuse treatment. Defendants Undisputed Statement of Facts (DSUF) (ECF No. 71-3) ¶¶ 32, 35; Response to DSUF (ECF No. 75) ¶¶ 32, 35; ECF No. 76-2 at 2-3, ¶ 6. He then waited approximately five months before renewing his requests for surgery to defendant Soltanian. DSUF ¶¶ 35-36; Response to DSUF ¶¶ 35-36. "While it is clearly within [plaintiff's] rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition." McNeil v. Singh, No. 1:12-cv-01005-RRB, 2013 WL 1876127, at *19 n.59, 2013 U.S. Dist. LEXIS 63891, at *56 (May 3, 2013) (where plaintiff had declined surgery on at least two occasions and refused medication "because he felt that it was improper or medically harmful"). Though plaintiff declares that the orthopedist told him "that only U.C. Davis Medical Center, Shoulder Upper Extremity Dept. could perform [his] surgery" (ECF No. 76-2 at 2-3, ¶ 6 (emphasis in original)), this testimony is inadmissible hearsay and there is no admissible evidence to support the claim that UC Davis was the only hospital capable of performing the surgery or that the specialist believed that to be the case.[6] There is no evidence to

---

[5] The court notes that Appeal No. 2035, which was an attachment to Appeal No. 1296 and has not been addressed by either party in the exhaustion context, was fully exhausted. ECF No. 71-5 at 27-29. However, Appeal No. 2035 deals specifically with plaintiff's complaints about being denied an MRI and delays in obtaining a diagnostic appointment with Dr. Lovett and predated any request or recommendation for surgery. ECF No. 71-5 at 20-21.

[6] The orthopedist did recommend that the surgery take place at UC Davis Medical Center, but his (continued…)

12

1  support plaintiff's contention or otherwise demonstrate that a referral to San Joaquin General

2  Hospital was medically unacceptable.

3      Because there is no right to a specific health care provider and no evidence that the

4  decision to refer plaintiff to San Joaquin General Hospital instead of UC Davis was medically

5  unacceptable, defendant Soltanian is not liable for any delays caused by plaintiff's refusal of

6  treatment or for delays caused by plaintiff waiting to renew his request for surgery.

7                  1.   First Request for Surgery

8      Defendants argue plaintiff could have exhausted Appeal No. 1296, but took no further

9  action after he received a first-level response. ECF No. 71-1 at 16. Relying on Harvey v. Jordan,

10  supra, plaintiff argues he was excused from the exhaustion requirement because his request was

11  partially granted. ECF No. 74 at 9.

12      Plaintiff was informed that he could appeal the partial grant, and admits he was advised he

13  could appeal, but did not. ECF No. 75 at 2, ¶¶ 4-5. However, while he correctly states that under

14  Harvey "[a]n inmate has no obligation to appeal from a grant of relief or a partial grant that

15  satisfies him, in order to exhaust administrative remedies," he does not actually allege that he was

16  satisfied with the response he received. ECF No. 74 at 9. Nevertheless, even if plaintiff did

17  allege satisfaction with the response, the evidence before the court demonstrates that he was not

18  satisfied. While the evidence shows that plaintiff received a consult with Dr. Lovett and was

19  approved for surgery, which supports a claim that he was satisfied and that no further remedies

20  remained, his subsequent actions and current averments demonstrate dissatisfaction that arose

21  within the time for appealing the first-level decision and that potential additional remedies

22  existed.

23      According to the documentation for Appeal No. 1296, the first-level response was typed

24  on August 2, 2011, and returned to plaintiff the next day. ECF No. 71-5 at 14, 31. Plaintiff had

25  thirty calendar days to appeal. Id. at 31; Cal. Code Regs. tit. 15, § 3084.8(b)(3). Records indicate

---

27  recommendation does not indicate that UC Davis was the only capable hospital. ECF No. 76-2 at 4.

13

1  that he refused the referral to San Joaquin General Hospital on August 28, 2011, which was
2  within the thirty-day appeal period. ECF No. 71-6 at 6. In responding to the motion for summary
3  judgment, plaintiff has admitted that he resisted the referral to San Joaquin General Hospital
4  (Response to DSUF ¶ 35) and affirmatively declared that he initially refused to be treated at San
5  Joaquin General Hospital because Dr. Lovett told him that only UC Davis could perform the
6  surgery and he knew that CDCR had a contract with UC Davis (ECF No. 76-2 at 2-3, ¶ 6).

7  Given plaintiff's failure to actually allege satisfaction with the response he received and
8  the evidence demonstrating dissatisfaction, the undersigned finds that plaintiff was not excused
9  from further pursuing Appeal No. 1296.

10                    2.    Second Request for Surgery (Appeal No. 2656)

11  The parties are in agreement that Appeal No. 2656 was cancelled at the first level as
12  untimely. DSUF ¶ 6; Response to DSUF ¶ 6. The parties are also in agreement that plaintiff was
13  advised that he could appeal the cancellation, but did not. DSUF ¶¶ 7-8; Response to DSUF ¶¶ 7-
14  8. Defendants argue that because the appeal was cancelled, it was not exhausted. ECF No. 71-1
15  at 17. Plaintiff asserts, in reliance on Marella v. Terhune, supra, that he was not required to
16  appeal from a decision when the rejection form states that the action may not be appealed, even
17  "when the 'no appeal' statement is followed by language inviting the complainant to state in what
18  manner the reason for the rejection is 'inaccurate.'" ECF No. 74 at 9-10. Plaintiff argues that he
19  "took this cancellation as 'final' and believed no further options were available." Id. at 9. He
20  also alleges that he "was unaware of what a 'continuing action' was and that he could further
21  appeal the rejection." Id. at 10. He asserts that the term "continuing action" is not defined in the
22  regulations. Id.

23  Plaintiff's reliance on Marella is misplaced. In Marella, the plaintiff's appeal was rejected
24  because it was untimely and he failed to explain why he did not or could not file in a timely
25  manner. 568 F.3d at 1027. The Ninth Circuit found that because the reasons the appeal had been
26  cancelled were accurate, Marella had been effectively instructed that the further appeals process
27  was unavailable to him. Id. Unlike Marella, plaintiff had grounds on which to assert the
28  cancellation was inaccurate. Although it was correct that plaintiff had been seen by Dr. Lovett

1  over a year prior, if his attempts to obtain shoulder surgery were an ongoing issue, as he argues,
2  he could have appealed the cancellation on the ground that the appeal was not based on a single
3  event, but instead presented a continuing issue that began with the referenced visit with Dr.
4  Lovett.  See Cal. Code Regs. tit. 15, § 3084.6(c)(4) ("If the issue is ongoing . . . the inmate or
5  parolee may appeal any time during the duration of the event.").

6  Although plaintiff argues that he did not know that he could appeal the cancellation, he
7  admits that the cancellation letter advised that he could appeal the cancellation if it was inaccurate
8  and provide a reason why he believed it was in error.  Response to DSUF ¶ 7.  The letter also
9  pointed plaintiff to the specific subsection of the regulations under which his appeal was
10 cancelled and that subsection explicitly states that ongoing issues may be appealed at "any time
11 during the duration of the event."  ECF No. 71-d at 35 (citing Cal. Code Regs. tit. 15, §
12 3084.6(c)(4)).  Plaintiff's claim that "continuing action" is not defined is also unavailing.  The
13 regulation does not use that term and instead refers to whether an "issue is ongoing," the plain
14 meaning of which is clear.  Cal. Code Regs. tit. 15, § 3084.6(c)(4).

15 Alternatively, plaintiff could have argued that the cancelled appeal was eligible for further
16 review because after he was seen by Dr. Lovett in 2011, he refused treatment.  See Cal. Code
17 Regs. tit. 15, §§ 3084.6(a)(3) ("A cancellation may later be accepted if . . . new information is
18 received which makes the appeal eligible for further review.").  Plaintiff could have explained
19 that the determination that his appeal was untimely was inaccurate because the action he was
20 appealing was the denial of his renewed request for surgery,[7] not a failure to act on the original
21 recommendation.

22 Because plaintiff could have continued to pursue the cancelled appeal by informing prison
23 officials that his appeal was not untimely and the cancellation was in error, further administrative
24 remedies were available as to Appeal No. 2656 and it was not exhausted.  Ransom v. Aquirre,
25 No. 1:12-cv-1343, 2013 WL 5923104, at *7, 2013 U.S. Dist. LEXIS 157250, at *19 (E.D. Cal.

---

[7] In his verified complaint, plaintiff alleges that he saw defendant Soltanian on July 9, 2012, and requested surgery, but was told that "since Plaintiff was right-handed, any problems in his left side would not effect is quality of life and that Plaintiff is 'too old.'"  ECF No. 21 at 8-9.

Nov. 1, 2013, adopted in full Mar. 12, 2014[8]) (holding cancelled grievance did not exhaust remedies because a separate appeal of the cancellation decision could have been filed).

### 3. Conclusion

Plaintiff has failed to show that he was excused from exhausting his administrative remedies as to his claims against defendant Soltanian. Because the claims are unexhausted, the court declines to consider whether defendant Soltanian was deliberately indifferent or whether he is entitled to qualified immunity.

### B. Defendants Smith and Heatley

In the Findings and Recommendations on the previous motion for summary judgment, the court found that Appeal No. 0563 was sufficient to put prison officials on notice that plaintiff was seeking a medical hold at MCSP and that he believed failing to issue a medical hold endangered his health. ECF No. 49 at 9-12. However, the court went on to find that it was not exhausted until several days after plaintiff first brought his claims for failure to issue a medical hold against defendants Smith and Heatley in the first amended complaint. Id. at 11. While finding that Appeal No. 0563 was not properly exhausted, the court also found that defendants had not met their burden in showing plaintiff had failed to exhaust because plaintiff had also pursued a distinct administrative appeal (Appeal No. 3499) that defendants had not addressed. Id. at 11-12.

Defendants' present motion for summary judgment addresses Appeal No. 3499, which involved plaintiff's request for a long-term medical hold to stop his impending transfer to VSP. ECF No. 71-5 at 5-6. As set forth above, the appeal was rejected at the second level for failure to attach necessary supporting documents and plaintiff did not proceed any further with the appeal despite being advised that it could be resubmitted. DSUF ¶¶ 15-18; Response to DSUF ¶¶ 15-18. Defendants argue that because the grievance was rejected at the second level, it was therefore not exhausted because plaintiff could have resubmitted the grievance with the missing documents. ECF No. 71-1 at 18.

////

---

[8] 2014 WL 994606, 2014 U.S. Dist. LEXIS 32291.

In opposition, plaintiff argues the medical hold was moot because he had already been transferred, thus no further administrative remedies would have been available to him. ECF No. 74 at 8-9. However, he admits that he attempted to submit his appeal to the second level after he had been transferred (id.), which indicates he believed other remedies were available to him at that time. In fact, the second-level appeal indicates that plaintiff was also seeking some kind of administrative action against the defendants. ECF No. 71-5 at 7. That officials from MCSP appear to have tried to reach out to him at VSP to conduct an interview and advised that he could continue with his appeal if he made the necessary corrections also demonstrates that administrative remedies were still available even though plaintiff had been transferred. Id. at 9. Plaintiff's allegation that he never received the first-level denial or associated paperwork is contrary to the record. ECF No. 74 at 8-9. Plaintiff's second-level appeal clearly references an "answer" to his lower-level appeal (ECF No. 71-5 at 7) and the response stated that if he required assistance with the appeal he should contact the VSP Health Care Appeals Office (ECF No. 71-5 at 11).

Because it is possible that plaintiff could have obtained some relief through the grievance process, he was required to exhaust his administrative remedies by continuing with the process. Brown, 422 F.3d at 935 (the obligation to exhaust persists so long as some remedy remains available). Plaintiff has failed to show that administrative remedies were not available and is therefore not excused from exhausting this appeal even though he had already been transferred. Since plaintiff did not exhaust his administrative remedies as to his claims against defendants Smith and Heatley, the court declines to consider whether defendants were deliberately indifferent or entitled to qualified immunity.

VIII.     Summary

The undersigned finds that administrative remedies were available to plaintiff in Appeal Nos. 1296, 2656, and 3499 and that he did not appeal to the director's level in any of the appeals. In Appeal No. 1296, plaintiff did not claim that he was actually satisfied and the evidence in the record shows that he was not satisfied. In Appeal No. 2656, plaintiff could have appealed the cancellation of his appeal because the decision that it was untimely was incorrect. Finally, in

Appeal No. 3499, plaintiff has not shown that his transfer made all potential relief unavailable and his attempt to file a second-level appeal after he was transferred shows that he believed some remedies were still available. Because plaintiff did not exhaust the appeals process, his claims against defendants Smith, Heatley, and Soltanian must be dismissed.

IX.     Conclusion

For the reasons set forth above, the court finds that plaintiff did not satisfy the exhaustion requirements for his claims against defendants because administrative remedies were available and plaintiff failed to exhaust them. Accordingly, his claims against defendants Soltanian, Smith, and Heatley should be dismissed.

IT IS HEREBY RECOMMENDED that

1. Plaintiff's motion for summary judgment (ECF No. 76) be denied as untimely.

2. Defendants' motion for summary judgment (ECF No. 71) be granted and the claims against defendants Smith, Heatley, and Soltanian be dismissed for failure to exhaust administrative remedies.

3. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **ten days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within **seven days** after service of the objections. **Due to exigencies in the court's calendar, no extensions of time will be granted.**[9] The parties are advised that failure to

////

////

////

---

[9] Plaintiff is informed that in order to obtain the district judge's independent review and preserve issues for appeal, he need only identify the findings and recommendations to which he objects. There is no need to reproduce his arguments on the issues.

file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE